IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WIL-KEN ENTERPRISES, INC.,
a Kansas Corporation,

                    Plaintiff,

v.                                                  Case No.  24-CV-1020-JWB

ARJH LP, a Texas limited partnership,
et al.,

                    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion for partial dismissal of the amended complaint.  (Doc. 140.)  The motion is fully briefed and ripe for decision.  (Docs. 140, 153.)[1]  The motion is DENIED for the reasons stated herein.

## I.    Facts

The following facts are taken from Plaintiff's amended complaint.  (Doc. 119.)  The court assumes their truth for purposes of this order.  Plaintiff Wil-ken is a Kansas corporation based in Wichita.  (*Id.* at 4.)[2]  Defendant ARJH LP is a limited partnership based in Texas.  (*Id.*)  Defendant AJTX Management, LLC, is the general partner of ARJH and is based in Texas.  (*Id.*)  Defendants Abdul and Jamal Hamideh are apparently residents of Louisiana and Texas respectively.  (*Id.*) Defendant JHAH KS LP is a Texas limited partnership with its principal place of business in New Orleans, Louisiana.  (*Id.* at 5.)  Defendant Abdul Hamideh is the general partner of JHAH KS.

---

[1] The court notes that Defendants did not file a reply brief.

[2] All citations to the record utilize the ECF-assigned pagination at the top of all documents filed with the court.

(*Id.*) Defendant JHAH MO LP is a Missouri limited partnership with its principal place of business in New Orleans, Louisiana. (*Id.*)

On September 7, 2022, Plaintiff and Defendants Abdul Hamideh, ARJH, and AJTX entered into a purchase and sale agreement. (*Id.* at 5–6.) Defendant Abdul Hamideh was added to the agreement via a separately executed "Joinder to the Asset Purchase and Sale Agreement." (*Id.*) Defendant ARJH is the "Buyer" under the agreement. (*Id.*) Defendant AJTX also signed the agreement as the general partner of Defendant ARJH. (*Id.*) Defendant Abdul Hamideh also signed the agreement as a "co-indemnitor." (*Id.*) The agreement is governed by Kansas law. (*Id.*)

The agreement bound Defendants ARJH, AJTX, and Abdul Hamideh to pay $4.25 million to Wil-ken for the purchase of restaurants in Wichita, Kansas. (*Id.* at 2, 7.) The agreement also bound the same Defendants to subsequently pay "three annual earnout payments in the amount of Six Hundred Sixty-six Thousand Six Hundred and Sixty-seven Dollars ($666,667.00)" plus interest. (*Id.* at 7.) These earnouts were only payable if the "Net Sales of the Restaurants" for each "Post-Closing Period" were equal to or greater than the same "Net Sales of the Restaurants ('Sales Target') for the period commencing on October 4, 2021, and continuing through October 2, 2022[.]" (*Id.*) The "Sales Target" was $9,279,162. (*Id.* at 8.) If such target was met each year, Defendants were required to pay the $666,667 to Plaintiff no later than 45 days after the closing of each of the three periods. (*Id.*) Plaintiff was entitled to inspect the financial records of Defendants to determine the accuracy of their accounting of their sales. (*Id.*)

During the first year (the first post-closing period) following the agreement, Defendants' restaurants exceeded the sales target, posting a net sales amount of $9,930,128. (*Id.*) This required Defendants to "remit payment of $666,667.00 plus interest" to Plaintiff by November 15, 2023. (*Id.* at 8–9.) Plaintiff's counsel twice informed Defendant Abdul Hamideh of this fact. (*Id.* at 9.)

Defendants have never paid the earnout fee. (*Id.*) Plaintiff then alleges that the same facts repeated themselves during the second year following the agreement: Defendants failed to pay the earnout amount, despite Plaintiff's contention that the restaurants exceeded the sales target. (*Id.*) Finally, Plaintiff's contend that for the third year (which closed on October 31, 2025), they have reason to believe that Defendants will not pay the earnout fee if the restaurants exceed the sales target. (*Id.* at 10.)

The next part of Plaintiff's complaint contains alleged contractual terms between the parties. Rather than exhaustively cover them here, the court will refer to them in this order as it deems necessary. (*Id.* at 10–13.) The complaint then moves to additional allegations relevant to the underlying facts. Defendants apparently ignored the advice of their CFO who advised them that the earnout payment system "didn't make sense." (*Id.* at 14.) Plaintiff alleges that Defendants undercapitalized their businesses and knew they could not meet their contractual obligations. (*Id.*)

Also, Defendant Abdul Hamideh allegedly never intended to join the agreement despite his signature to the joinder provision which Plaintiff characterizes as a "material inducement for Wil-ken's execution of the agreement." (*Id.* at 15.) Additionally, according to Plaintiff, Defendant Jamal Hamideh "consented to, approved of, and ratified all actions taken by Defendants ARJH, AJTX, their affiliates, and Abdul Hamideh related to purchase of the restaurants and businesses from Wil-ken[.]" (*Id.* at 17.)

Next, Plaintiff claims that Defendant AJTX has never maintained financial records. (*Id.* at 17–18.) ARJH paid management fees to AJTX in 2023 and 2024 that totaled nearly $700,000. (*Id.* at 17.) Plaintiff's claim that these management fees and AJTX's lack of financial records, indicate that AJTX is "improperly siphoning money out of ARJH (to, among others, Abdul

3

Hamideh and Jamal Hamideh), thus artificially reducing ARJH's assets and further undercapitalizing ARJH." (*Id.* at 18); *see also* (*id.* at 18–20.)

Consequently, Plaintiff's raise ten causes of actions against Defendants. Count I is a common law breach of contract claim against Defendants ARJH, AJTX, and Abdul Hamideh. (*Id.* 20–22.) Count II is a claim for breach of the implied covenant of good faith and fair dealing against the same Defendants. (*Id.* at 22–23.) Count III is a fraudulent or negligent misrepresentation claim against the same Defendants. (*Id.* at 23–27.) Count IV is a common law fraud or fraud in the inducement claim against the same Defendants. (*Id.* at 27–31.) Count V is a "Voidable/Fraudulent Transfer—Actual and Constructive Fraud" claim against all Defendants. (*Id.* at 31–37.) Count VI is a tortious interference with contract claim against Defendants Jamal Hamideh, JHAH MO LP, and JHAH KS LP. (*Id.* at 37–39.) Count VII is a conspiracy claim against all Defendants. (*Id.* at 39–41.) Count VIII is an unjust enrichment and constructive trust claim against all Defendants. (*Id.* at 41–42.) Count X[3] is an "alter ego liability/veil piercing/single enterprises" claim against all Defendants. (*Id.* at 42–47.) Count XI seeks a declaratory judgment. (*Id.* at 47–53.)

Defendants have moved to dismiss counts IV through XI of Plaintiff's amended complaint for failure to state a claim. (Doc. 140.) Plaintiff resists this. (Doc. 153.) The court considers the parties' arguments on each count below.

## II.    Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v.*

---

[3] Plaintiff's complaint skips a count, moving from count VIII to count X. (Doc. 119 at 41-42.)

*Twombly*, 550 U.S. 544 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### III.   Analysis

The court notes at the outset that Plaintiff's complaint is 55 pages long.  Defendants' motion to dismiss more than half of the complaint is a mere seven pages.  As will become clearer below, this is woefully inadequate to contest the issues Plaintiff raises.

### A.   Count IV: Fraud and/or Fraud in the Inducement

Plaintiffs' count IV alleges that Defendants entered into certain provisions of the agreement with no intention of performing.  (Doc. 153 at 11.)  Defendants argue that this count is asserted only because they brought a counterclaim for purported omissions and misrepresentations that Plaintiff allegedly made in the context of the contract negotiation.  (Doc. 140 at 6.)  Defendants claim that the alleged misrepresentations are not statements they made that induced Plaintiff to enter into the contract, but instead "pleads that Defendant committed fraud by signing the Agreement." (*Id.*)  They argue that this cannot support a claim for fraudulent inducement.  Plaintiff disagrees and points the court toward case law that they argue supports a claim for fraudulent misrepresentation where a party makes promises within a contract that it has no intention of performing.  (Doc. 153 at 11–12.)

The court agrees with Plaintiff.  The "gravamen," as Defendants put it, of Plaintiff's fraud claim is that when Defendants ARJH, AJTX, and Abdul Hamideh entered into the sales agreement they had no intention of performing parts of their obligations under it.  (Doc. 119 at 27–31.)  Specifically, Plaintiff claims that Defendants had no intention to assume contracts and liabilities

related to the restaurants, which they were required to do under the agreement.  (*Id.* at 28–29.) This can make out a claim for fraud.  *See Gerhardt v. Harris*, 934 P.2d 976, 981 (Kan. 1997) ("A promise to do something in the future, if the promisor had no intention at the time the promise was made to carry it out, is deceit, and if the promisor obtained anything of value by reason thereof, there is actionable fraud.") (citing *El Dorado Nat'l Bank v. Elkmeier*, 300 P. 1085 (1931)). Defendants make no further arguments on Plaintiff's fraudulent inducement claim so their motion to dismiss must be denied as to count IV.

B.      **Count V: Voidable/Fraudulent Transfer – Actual and Constructive Fraud**

Count V is brought under the Uniform Fraudulent Transfer Act ("UFTA"), as adopted by the State of Kansas.  (Doc. 119 at 31–37.)  Defendants argue that the complaint does not meet the pleading requirements imposed by Rule 8 and the particularity requirements of Rule 9(b).  (Doc. 140 at 2–5.)  With this, Plaintiff vehemently disagrees.  (Doc. 153 at 12–15.)  Plaintiff also disputes that Rule 9(b) applies to this claim but argues that even if it does, the standard has been met.  (*Id.* at 13.)

Under the UFTA, an action for fraudulent transfer requires that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

   (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

   (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

       (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

       (B) intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due.

6

K.S.A. § 33-204(a).  The statute non-exhaustively specifies a range of factors that may be used to infer intent.  *Id.* at § 33-204(b)(1)–(11).  Plaintiff pleads that Wil-ken is a creditor and Defendants are debtors within the meaning of the Act as they owe payments to Wil-Ken.  (Doc. 119 at 31–32.) According to Plaintiffs, Defendants ARJH, AJTX, Abdul Hamideh, and Jamal Hamideh transferred assets to AJTX, JHAH MO, and JHAH KS, which deprived ARJH of the capital required to meet its contractual obligations.  (*Id.* at 32–33.)  This undercapitalized ARJH and was allegedly done with "the intent to hinder, delay, or defraud Wil-ken."  (*Id.* at 33.)  These transfers were purportedly disguised as the aforementioned "management fees" that AJTX charged ARJH. (*Id.* at 18–19.)

Defendants object by claiming that Plaintiff does not "allege what was given for the alleged fraudulent transactions which makes it impossible to determine if the transfer elicited a 'reasonably equivalent value.'"  (Doc. 140 at 3.)  But this argument fails because the statute does not include this requirement in the provision under which Wil-ken sues.  *See* (Doc. 153 at 12–13.)  *Compare* K.S.A. § 33-204(a)(1) *with* K.S.A. §§ 33-204(a)(2), 33-205(a).  *McCain Foods USA v. Central Processors, Inc.*, 61 P.3d 68, 75 (Kan. 2002) ("A fraudulent transfer occurs when a debtor intends to hinder, delay, or defraud a creditor, *or* transfers property under certain conditions to another person without receiving reasonably equivalent value in return.") (emphasis added).  Under K.S.A. § 33-204(a)(1), all Wil-ken must plead is intent to "hinder, delay or defraud any creditor of the debtor."  *Id.*  They have done so, and Defendants have raised no arguments regarding the "badges of fraud" that are used to evince intent under § 33-204(b).  *McCain Foods USA*, 61 P.3d at 75–76. The court will not craft arguments on Defendants behalf.  For the same reason as above, Plaintiffs do not need to plead, as Defendants allege, that the transferors are "undercapitalized, insolvent, or were rendered insolvent at the time of the alleged transfer."  (Doc. 140 at 3.)

Defendants' next argument is that Plaintiff fails to establish that it is a creditor, and Defendants are debtors. (Doc. 140 at 3, n. 4.) This fails. The UFTA's definition of creditor and debtor is extraordinarily broad. *See* K.S.A. § 33-201 (d), (f) ("'Creditor' means a person who has a claim . . . 'Debtor' means a person who is liable on a claim."). A "claim" is defined as "a right to payment, *whether or not the right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* at § 33-201(c) (emphasis added). Plaintiff has pled factual matter that establishes it is a creditor and Defendants are debtors. All but one of Defendants' other arguments in their motion are directed at a part of the statute under which Wil-ken does not sue. (Doc. 140 at 3–4.); (Doc. 153 at 12.)

Defendants' one remaining argument is that because the complaint lacks specificity with regard to which transactions were fraudulent, the court lacks the ability to grant relief. (Doc. 140 at 3, n. 3.) But Plaintiff responds that it does plead specific transactions and dollar amounts and directs the court to the management fees that ARJH paid to AJTX to the tune of hundreds of thousands of dollars. (Doc. 153 at 13) (citing Doc. 119 at 18–20.) Based on the analysis above, the court finds that Plaintiff's complaint complies with Rule 8 and to the extent Rule 9(b) applies, the complaint satisfies the heightened pleading standard for fraud. *See* (Doc. 119 at 17–20.) As to count V, Defendants' motion to dismiss is denied.[4]

### C.    Count VI: Tortious Interference with a Contract

Defendants' short argument to dismiss count VI fails. Defendants claim that Plaintiffs plead that all the Defendants have control over one another but also plead that Defendants

---

[4] Defendants' motion to dismiss counts VII and VIII is based only on the same arguments raised in the motion's coverage of count V. Because those arguments fail as to count V, they also fail as to the "derivative" counts VII and VIII. (Doc. 140 at 4–5.) Defendants' motion to dismiss counts VII and VIII is denied.

interfered with the contract between Plaintiff and Defendants. (Doc. 140 at 5.) It appears Defendants see this as incoherent. But this argument is easily defeated by Plaintiff's response. Plaintiff only asserts the tortious interference claim against Defendants JHAH MO, JHAH KS, and Jamal Hamideh. (Doc. 119 at 37.) These entities are not parties to Plaintiff's agreement. (Doc. 119 at 6.) Therefore, Plaintiff can simultaneously maintain that Defendants assert some degree of control over each other *and* that one group of Defendants interfered with the others' contract. Defendants' motion to dismiss count VI is denied.

### D. Count X: Alter Ego Liability/Veil Piercing/Single Enterprise

Defendants' argument to dismiss count X is similarly brief. (Doc. 140 at 5.) Defendants mainly invoke their failed prior arguments on fraudulent transfer. (*Id.*) But they also argue that Plaintiff's allegations fail because the fact that Defendant AJTX failed to keep financial records and that Defendant Hamideh is a common owner are not "illegal." (*Id.*) But this is inapposite. As Plaintiff explains, a court can pierce the "corporate veil" if several factors justify it. *See Sampson v. Hunt*, 665 P.2d 743, 751 (Kan. 1983) ("(1) Undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.") (quoting *Amoco Chemicals Corp. v. Bach*, 567 P.2d 1337 (1977)). Any combination of these factors may suffice to justify piercing the veil. *See Amoco Chemical Corp.*, 567 P.2d at 1341–42.

The court agrees that Plaintiff has pled multiple factors that could possibly counsel piercing the veil and it is certainly sufficient to survive a motion to dismiss. Plaintiff pleads that AJTX "is

9

the purported manager of ARJH" but does not maintain financial records. (Doc. 119 at 42.) This is possibly failure to observe corporate formalities and/or an absence of corporate records. (*Id.*) Plaintiff also points out that Defendants admit AJTX and ARJH have the same bank account; this could also indicate a failure to observe corporate formalities and/or the use of one of the Defendants as a façade for the operations of another. (Doc. 153 at 18.) Plaintiff's fraudulent transfer claim, and their accompanying identification of the relevant transactions, supports the notion that Defendants are undercapitalized. (Doc. 119 at 18–20, 43–44.) Moreover, the entire basis of Plaintiff's complaint—Defendants' failure to pay their contractually obligated earnout fee—suggests that the purpose of this web of corporate entities is to "promote injustice or fraud." *Sampson*, 665 P.3d at 751. Lastly, Plaintiff goes further to allege that Defendants Jamar and Abdul Hamideh have benefitted from the fraudulent transfers by virtue of their position as the owners of ARJH, AJTX, JHAH MO, and JHAH KS. (Doc. 119 at 42–43, 45–46.) This could indicate the "siphoning of corporate funds by the dominant stockholder." *Sampson*, 665 P.3d at 751. With these considerations in mind, Plaintiff's veil piercing claim may proceed, and Defendants' motion to dismiss is denied as to count X.

### E.    Count XI: Declaratory Judgment

Lastly, Defendants move for dismissal of Plaintiff's request for declaratory judgment. (Doc. 140 at 5–6.) They analogize the claim to one for "summary judgment or judgment as a matter of law in the middle of discovery." (*Id.*) This, they say, is "improper." (*Id.*) The court struggles to understand what Defendants argue on this point. Plaintiff has neither moved for summary judgment nor sought judgment of any kind at this stage. Defendants' motion concerns Plaintiff's complaint, which seeks a declaratory judgment as one remedy should it prevail on the merits. (Doc. 119 at 47–53.)

10

A declaratory judgment is used to clarify the rights of parties vis-à-vis each other. 28 U.S.C. § 2201(a). They are used when the court can provide relief to one party by explaining another party's obligation. *See Travelers Casualty Ins. Co. of America v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1315 (10th Cir. 2024) ("Our precedent is clear that district courts may, consistent with Article III, exercise their authority to resolve insurance coverage disputes via the Declaratory Judgment Act so long as there exists a real controversy between the parties regarding their rights and responsibilities under the relevant policy."). Here, that is exactly what Plaintiff seeks, an order from this court that explains the parties' rights and obligations under Sections 5(a), 5(b), 5(d), 5(e), 7(a), Schedule 7(A), and 9(k). (Doc. 119 at 47–53.) If granted, an order would affect counterclaims raised by Defendants against Plaintiff. *See* (*id.* at 50.) This is an appropriate use of a declaratory judgment request. *See A-Quality Auto Sales*, 98 F.4th at 1315. Accordingly, Defendants' motion to dismiss count XI is denied.

### F.       Defendants' Alternative Arguments

In the alternative, Defendants seek a more definite statement under Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."). This court declines to order Plaintiff to produce a more definite statement as it views the complaint (already 55 pages long) as sufficiently detailed to afford Defendants an opportunity to respond.[5]

### IV.    Conclusion

For the foregoing reasons Defendants' motion to dismiss (Doc. 140) is DENIED.

---

[5] At the beginning of their motion, Defendants also make one passing reference to Fed. R. Civ. P. 12(c) which provides for judgment on the pleadings. (Doc. 140 at 1.) Defendants, however, do not argue for judgment on the pleadings in the body of their motion. (*Id.*) Plaintiff requests that to the extent the mention of Rule 12(c) constitutes a motion for judgment on the pleadings, that the motion be denied. (Doc. 153 at 5–6.) As Defendants do not advance an argument regarding 12(c), the motion for judgment on the pleadings is denied.

IT IS SO ORDERED.  Dated this 14th day of May, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE